Argued April 2, reversed April 20, rehearing denied May 18, 1915.

## SUSZNIK *v.* ALGER LOGGING CO.

(147 Pac. 922.)

**Pleading—Defenses—"Inconsistent Defenses."**

1. Defenses are not inconsistent when they may all be true, and are only inconsistent when some of them must necessarily be false if others are true, and in such a case they cannot be united.

**Pleading—Defenses—Inconsistent Defenses.**

2. In an action for injuries based on the theory of the relation of passenger and carrier between plaintiff and defendant, an answer setting up the Workmen's Compensation Act as affording the remedies for plaintiff, and alleging that plaintiff was guilty of negligence, does not set forth inconsistent defenses, though allegations in the first defense that plaintiff was riding on the train without the consent or knowledge of defendant, and of plaintiff's negligence, are irrelevant, because under the compensation act such questions are eliminated.

Carriers—Injuries to Passengers—Existence of Relation—Issues.

3.   Where the complaint, in an action for a personal injury, alleged that the relation of passenger and carrier existed between plaintiff and defendant at the time of the accident causing the injury, defendant could plead and prove that the relation of master and servant existed, and that plaintiff must resort to the relief afforded by the Workmen's Compensation Act.

Carriers—Master and Servant—Passengers—Existence of Relation.

4.   Plaintiff visited an office of defendant, seeking employment, and was directed by the person in charge thereof to go to defendant's camp near a designated town to begin work.   When he reached the town, he went to defendant's logging train, and was there directed by the engineer to place his baggage on the pilot of the engine and get aboard.   He rode on the pilot to the logging camp.   Before leaving the immediate vicinity of the train, he was injured.   He did not do any work or receive any compensation from defendant prior to the accident.   Held, that the relation between the parties was that of passenger and carrier, and not of employee and employer, within the Workmen's Compensation Act.

Appeal and Error—Harmless Error—Erroneous Rulings on Pleadings.

5.   Where the relation between plaintiff, suing for a personal injury, and defendant, was that of passenger and carrier, the striking out of defendant's plea of the Workmen's Compensation Act was not prejudicial.

Carriers—Injuries to Passengers—Contributory Negligence.

6.   An answer, in an action for injury to a passenger, which alleges that plaintiff was transported by defendant on its logging train gratuitously solely for the benefit of plaintiff and defendant in connection with the business in which defendant was engaged, and that plaintiff, on reaching his destination, ran in front of the engine and was injured, sets forth plaintiff's contributory negligence, though it does not admit any negligence of defendant.

     [As to who are passengers on a train, see note in 61 Am. St. Rep. 65.]

From Multnomah: Thomas J. Cleeton, Judge.

In Banc.   Statement by Mr. Justice Benson.

This is an action for damages resulting from personal injuries.   On the 25th day of August, 1913, plaintiff applied to the Evans Employment Company, of Portland, under the name of Joe Wagner, for a job as a "wood buck" or wood-chopper.   He was given what is referred to in the testimony as a "ticket" or "employment ticket," which appeared upon the face to be a contract between plaintiff and the employment

bureau, whereby the latter was to find employment or refund the fee of $1 which plaintiff paid therefor. This ticket reads as follows:

"Must have blankets and pay own fare $1.50. Evans Employment Company, 20 North Second Street, Portland, Oregon, P. S. Phone Main 1639, Home Phone A–3074. Licensed. Bonded. Received from Joe Wagner the sum of $1 for which we agree to furnish correct information by which the above-named employee shall be enabled to secure a situation with Alger Logging Company at 818 Spaulding Bldg., as wood buck, wages $2.50 per day, board $5 per week. Hospital $1 per month. Failing to do which we promise to refund the above amount paid, and the fare for transportation actually paid to and from the place where said applicant is sent by said agent, on return of this receipt, together with a written statement from the employer or other evidence that the applicant could not get the situation. This ticket is good for a job, any time within 31 days from date of issue; and for which the fee is the same as stated herein; except where transportation is furnished. Not responsible for loss of ticket. Evans Employment Company, by F. B. C. Report at this office for directions 10 A. M. to-day. Not transferable. No money returned after two days. I the undersigned received directions to the above-stated position at ——, and agree to go as directed. Failing to do which I forfeit all right to the position and the fee paid for the information. I am thoroughly experienced as above. Signature of employee: ——. Ticket No. 2425. Order No. 229. Ordered by B. Alger."

Upon the reverse side the following is printed and written:

"Take Str. Harvest Queen at 8 P. M. from Ash Street Dock to Skamokawa, Washington. Report Alger Logging Co., 818 Spaulding Bldg., 3rd and Washington St. To the employer. This should be filled out and signed by the employer in case the posi-

tion is not open for applicant. Under no considera-
tion should this be signed if the position is open as
stated hereon and you need the applicant for the posi-
tion. Time and date this ticket was presented: ———.
The bearer was not employed for the following rea-
sons: ———. Employer's signature: ———.''

Pursuant to instructions, plaintiff took this ticket
to the office of the defendant corporation in the
Spaulding building in Portland, where he presented
the same, and, under its instructions, took the steam-
boat to Skamokawa, Washington. He there placed
himself and baggage upon the pilot of the locomotive
which moved backward pushing defendant's logging
cars from the river to the logging camp. When the
train reached the camp, the cars were backed into a
roundhouse. The locomotive stood still long enough
for the brakeman to set the brakes upon the trucks
and uncouple them from the engine which then moved
forward for the purpose of unloading at the cook-
house some freight from the cab or tender. Just as
the engine started it struck the plaintiff, and he re-
ceived the injuries upon which the action is based.
The plaintiff testifies that, when the train stopped,
the engineer told him to get off, and while he was
doing so, with his suitcase and blanket-roll in his
hands, the locomotive started without any warning,
and he was thrown down and injured. Defendant
contends that he was standing at the side of the en-
gine, and, when it started, he recklessly ran in front
of it for the purpose of getting his baggage, and was
hurt by his own negligence.

The complaint is based upon the theory that, at the
time of the accident, the parties sustained the relation
of passenger and carrier. The answer, after a series
of denials sets up for the first affirmative defense that

plaintiff was an employee of defendant at the time that he received the injury, and was therefore compelled to look to the Workmen's Compensation Act of the State of Washington for indemnity, since by that law all remedies for such injuries by actions at law are abrogated. This defense is complicated by an additional allegation to the effect that, at the time of the accident, the plaintiff was riding upon defendant's locomotive without its knowledge or consent, and the further language as follows:

"The plaintiff thereupon, seeing said engine in motion, and being then at his destination, ran in front of same in order to remove his baggage, which he had placed on the cowcatcher, and was injured."

The second affirmative defense is, in effect, contributory negligence. In the statement thereof it is alleged, among other things, that:

"On or about the 26th day of August, 1913, plaintiff was transported by the defendant on its logging train from Skamokawa to defendant's logging camp gratuitously and without consideration therefor and not in performance of any contract, express or implied, between the defendant and plaintiff to furnish the same to plaintiff on account of his being in defendant's employ and not in partial payment or otherwise of any labor performed or to be performed by plaintiff for defendant, but solely for the mutual benefit and convenience of plaintiff and defendant in connection with the business in which the defendant was engaged and in which the plaintiff was employed."

Upon filing this amended answer, plaintiff moved the court to require defendant to elect between its two affirmative defenses upon the ground that they are inconsistent and to strike out the one not so elected. This motion was allowed by the court. Defendant having elected to stand upon the first affirmative de-

76 Or.—13

fense, plaintiff then moved to strike therefrom certain paragraphs, consisting of allegations setting out the several provisions of the Workmen's Compensation Act of the State of Washington and an alleged ruling of the "Industrial Insurance Commission of the State of Washington," purporting to be an interpretation of the compensation act and its application to the facts of the case at bar. The motion also went to that part of the first defense which reads:

"The plaintiff thereupon seeing said engine in motion, and being then at his destination, ran in front of the same in order to remove his baggage, which he had placed on the cowcatcher, and was injured."

This motion was allowed by the court, and the cause proceeded to trial. From a judgment for plaintiff, defendant appeals.                                   REVERSED.

For appellant there was a brief over the name of *Messrs. Wood, Montague & Hunt,* with an oral argument by *Mr. Isaac D. Hunt.*

For respondent there was a brief over the names of *Messrs. Littlefield & Smith* and *Mr. Lon L. Parker,* with oral arguments by *Mr. Parker* and *Mr. Isham N. Smith.*

MR. JUSTICE BENSON delivered the opinion of the court.

There are some 35 assignments of error which we shall consider as far as necessary to a determination of the case.

1, 2. The first of these is that the trial court erred in requiring the defendant to elect between its affirmative defenses upon the ground of inconsistency. This court has frequently passed upon the question here presented, and the rule is quite clearly expressed

by Mr. Chief Justice THAYER in the case of *McDonald* v. *American Mortgage Co.,* 17 Or. 633 (21 Pac. 886), when he says:

"The rule, as I understand it, in regard to inconsistent defenses, is that defenses are not inconsistent when they may all be true; that they are only inconsistent when some of them must necessarily be false, if others of them are true; in such a case they cannot be united."

This has been reiterated by this court in several later cases. Applying such test to the answer in the present case, we must conclude that there is no inconsistency between the plea of the compensation act and the plea of negligence, for both may well be true. It must be conceded that the allegation in the first defense that plaintiff was riding on defendant's train without its consent or knowledge, and the further averment of plaintiff's negligence, were irrelevant, since, under the compensation act, all questions of this sort are entirely eliminated. These allegations were mere surplusage, in no way affecting the vital elements of the defense, therefore might properly have been stricken out. The court erred in. requiring the defendant to elect.

3. The second assignment is that the court erred in striking out the defense of the Workmen's Compensation Act. This ruling of the trial court was evidently based upon the theory of plaintiff's counsel that, since the complaint alleges that the relation of passenger and carrier existed at the time of the accident, the defendant should be limited to denials. We cannot agree with court or counsel in this, but must insist that defendant was clearly entitled to plead and prove if it could, that the relation of master and servant existed, and that, by reason of the compensation act

of the State of Washington, the courts of Oregon were without jurisdiction to entertain the action. It follows that the court erred in this respect also.

4, 5. This brings us to a consideration of the evidence upon the question as to what was the true relation of the parties at the moment of the injury. They agree in their allegations that plaintiff was not a passenger for hire. There is no substantial conflict in the evidence as to the facts upon which we are to determine whether or not the relation of master and servant then existed. Plaintiff had visited the Portland office of defendant, and had there been directed by the person in charge to go to its camp near Skamokawa, Washington, to begin work. When he reached Skamokawa, he went to the defendant's logging train, and was there directed by the engineer to place his baggage upon the pilot of the engine and get aboard. He rode upon the pilot to the logging camp. Within a very brief period of time after such arrival, the accident occurred. He had not left the immediate vicinity of the train, had not reported to the foreman, had not spoken to anyone in charge, was not upon the pay-roll, and never did do any work or receive any compensation from defendant. Under these conditions, we are called upon to determine whether or not the plaintiff was an employee of defendant in the sense that he was entitled to indemnity under the compensation act of the State of Washington, and thereby barred from bringing this action:

This is the first time we have been called upon to consider a compensation act, but this court has indicated quite clearly a reasonable test as to the relation of master and servant in the recent case of *Putnam* v. *Pacific Monthly Co.*, 68 Or. 54 (136 Pac. 835, Ann. Cas. 1915C, 256, 45 L. R. A. (N. S.) 338), wherein Mr.

Chief Justice McBride in the opinion upon rehearing says:

"The testimony shows that deceased was employed by defendant as a stenographer on the fourth floor of the building; that her duties began at 8:30 in the morning; and that the accident happened at 8:20. At the time of her accident her time was her own. She was not the servant of the defendant until it was time for her to begin such service."

The case at bar is still more decisively differentiated in that plaintiff had never worked for defendant, and had never reached the point where work could be assigned to him. We have read with care the English cases cited in the briefs, but they are not convincing upon the facts before us. The case most nearly in point is that of *Leonard* v. *Baird & Co.,* 38 Scot. Law Rep. 649, but in that case the injured person had been employed to work in a coal mine. He had gone down into the pit. Before commencing work his lamp went out, and he took it and lighted one, borrowed from a fellow-workman, to the lamp station. While he was returning, he was crushed by a rake of hutches, and died from his injuries. Even under this state of facts, the court was reluctant to hold that he came within the provisions of the compensation act. There is no doubt that he was engaged in the employment of the company. The facts in the case at bar are very different. It is true that the defendant has pleaded in his answer and tendered in evidence a written opinion of the Industrial Insurance Commission of the state, based upon a reading of the complaint in this action, in which it held that the plaintiff is entitled to indemnity under the compensation act. But the same was prepared and delivered by two members of the commission in Portland, unofficially, since there was

no application for such compensation pending before them, and it does not impress us as having any more binding effect than a private expression of opinion by a trial judge upon the street corner. We conclude that plaintiff was not engaged in the employment of defendant at the time he was hurt. From this conclusion we reach the further inference that defendant suffered no substantial wrong by reason of the trial court's action in striking out of its first affirmative defense, the allegations relating to the compensation act, since, under the evidence, such defense must necessarily fail.

6. We next consider the effect of the order of election which resulted in striking out defendant's plea of contributory negligence. Plaintiff insists that it is not a plea of contributory negligence, because it does not admit any negligence upon the part of defendant, and cites a number of authorities supporting his position. However, this court in the case of *Edlefson* v. *Portland Ry., L. & P. Co.*, 69 Or. 25 (136 Pac. 834) has settled the question. In this case Mr. Chief Justice Moore says:

"Though a process of reasoning seems to support the rule thus announced in cases where contributory negligence is specially alleged as a defense, it is believed that where, as in the case at bar, the answer denies the negligence charged in the complaint, and avers specially that the injury complained of was caused by the carelessness of the person hurt, without alleging that such negligence was contributory, the special plea is not equivalent to a confession and avoidance. It is possible that the injury might be sustained by a person *sui juris* without any negligence on the part of the party owning or controlling the instrumentality causing the hurt. In such cases, to hold that the answer must confess negligence, so as to

avoid its consequences, in order to introduce evidence of the carelessness of the person hurt, is to place the defendant at a great disadvantage before the jury.''

We conclude, therefore, that defendant was entitled to have the jury instructed upon the law of contributory negligence, and that the trial court erred in refusing such requested instruction. For these reasons it is not necessary to consider the other assignments of error.

The judgment of the trial court is reversed and the cause remanded for a new trial.

REVERSED.     REHEARING DENIED.