## E. CLEMENS HORST CO. v. HARTFORD ACCIDENT & IDEMNITY CO.*

Circuit Court of Appeals, Ninth Circuit.
June 18, 1928.

No. 5373.

Insurance ⬅435—Within indemnity policy of hop field operator, one employed and being transported by employer to field, held "employee," and injured in "work ·necessary and and incidental" to hop picking.

Within indemnity policy taken out a month before hop-picking time by a hop field operator, who required for hop picking 2,000 persons, most of whom were brought from a distance, one employed for the picking and being transported by the employer to the field pursuant to the contract of employment, though two days ·before the work of picking was to begin, and injured while so being transported, was an "employee" of assured, and injured in "work necessary and incidental" to hop picking.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

· In Error to the District Court of the United States, for the District of Oregon; Robert S. Bean, Judge. .

Action by E. Clemens Horst Company against the Hartford Accident & Indemnity Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

The plaintiff in error, hereinafter named the plaintiff, owned and operated large hopyards in Oregon, and for the hop picking employed each season some 2,000 hop pickers. The pickers were engaged by means of advertisements and circulars, wherein the plaintiff stated that those whom it engaged would be hauled free from Salem and from Independence to its hop ranch, provided they arrived there between August 29 and August 31; that the picking was to begin September 1, 1925, and that pickers, when engaged, would be required to deposit $1 for each room or tent for two or more pickers, which deposit would be refunded after their arrival at the hopyards. On August 5, 1925, the plaintiff entered into a contract with W. P. Rogan and his wife, by the terms of which the latter were to pick hops, commencing September 1, 1925, at an agreed sum per pound, and were to be transported by the plaintiff without charge from the railroad station at Salem to the hopyards, and the plaintiff accepted from them $1 as deposit for the use of a cabin at the hopyards. On August 29, 1925, the Rogans were met by the plaintiff's agent at Salem, and while being carried upon a motor truck by the agent from Salem to the hop ranch, some 7 miles

*Rehearing denied August 6, 1928.

distant, they were thrown from the truck and sustained personal injuries under circumstances which rendered the plaintiff liable in damages. On October 27, 1925, they began an action against the plaintiff for damages, and thereupon the plaintiff furnished the defendant in error, herein named the defendant, with copies ·of the complaint and summons, and demanded that it defend said action in conformity with the provisions of the contract of liability insurance hereinafter to be referred to. The demand was refused, the defendant disavowing liability under its policy. On November 30, 1925, the plaintiff compromised the said cause of action by paying the Rogans $4,000, and notified the defendant of that fact, and demanded repayment which was refused.

The contract of insurance was entered into on July 27, 1925. Thereunder the defendant agreed to indemnify the plaintiff "against loss by reason of the liability imposed by law upon the assured for damages on account of bodily injuries suffered as the result of an accident, occurring while this policy is in force, by any employee or employees of the assured, while at or about the work of the assured described in warranty 4, which for the purpose of this insurance shall include all operations necessary, incident, or appurtenant thereto, or connected therewith, whether such operations are conducted at the work place defined and described in the warranties, or elsewhere, in connection with or in relation to such work places." Warranty 4 described the type of employment covered by the policy as: "Hop picking—including all work incidental thereto." There was an indorsement which provided that it was the intention of the policy "to cover all the operations of the assured in Oregon, whether or not such operations are declared in warranty 4." Another special indorsement was that the policy "covers employees of the assured who are hired and employed in Oregon, wherever such employees may be temporarily sent in the United States of America or Canada in the performance of their duties. This indorsement to take effect on the 13th day of August, 1925, at noon."

In sustaining a demurrer to the complaint, which alleged the above-mentioned. facts, the court below was of the opinion that the Rogans at the time of their injuries were not at work hop picking, or engaged in work incident to or connected therewith, but were being conveyed by the plaintiff to its ranch, where two days later they were to begin picking hops.

Brobeck, Phleger & Harrison, of San Francisco, Cal., and Ridgway, Johnson & Kendall, of Portland, Or. (Herman Phleger and Maurice E. Harrison, both of San Francisco, Cal., and Albert B. Ridgway, of Portland, Or., of counsel), for plaintiff in error.

Griffith, Peck & Coke, of Portland, Or., for defendant in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). Bearing in mind the controlling principle that, where a policy of insurance is so framed as to leave room to two constructions, the words used should be interpreted most strongly against the insurer (Liverpool & L. & G. Ins. Co. v. Kearney, 180 U. S. 132, 21 S. Ct. 326, 45 L. Ed. 460), we turn to the contract in question here, in order to determine from all of its provisions, as related to the circumstances and the purposes of the insurance to ascertain what was the intention of the parties thereto. It is apparent, from the terms of the policy and the nature of the enterprise in which the plaintiff was about to engage, that in entering into the contract of insurance on July 27, 1925, more than a month prior to the commencement of the actual work of picking hops, the plaintiff had in view insurance against liability on account of personal injuries from accidents which might occur as the result of negligence in all the operations connected with the annual work of picking hops during the season of 1925, the risks and hazards of which were obviously mainly confined to the hauling of operatives between railroad stations and the hopyards; for there could be little or no risk of personal injury to employés while actually encamped at the hopyards or engaged in the work of picking hops. The policy declares that the purpose of the insurance is to include all operations necessary, incident, and appurtenant to any employé or employés, whether such operations are conducted at the work place defined and described in the warranties or elsewhere, in connection with or in relation to such work places, and it describes the work covered by the policy as hop picking, "including all work incidental thereto," and the area covered by the policy was "anywhere in Marion and Polk counties, Oregon."

The work of enlisting the services of 2,000 hop pickers, the most of whom necessarily were brought from a distance, was clearly work incidental to hop picking, work without which the hop picking would have been impossible, and we are of the opinion that no unwarranted meaning is given to the word "employee," as it is used in the policy, if it is held to include all persons who shall have entered into a contract of employment with the plaintiff, and in pursuance of that contract rendered themselves to the plaintiff at an appointed rendezvous, to be carried by it to the hopyards, where the work was to be performed, although in the instant case that was done two days prior to the actual commencement of the work; for in the contract pains were taken to state broadly the risks that were intended to be insured against, and to provide that protection should extend to all operations necessary or appurtenant to hop picking, "including all work incidental thereto." Clearly, the transportation of the Rogans to their working place was an operation necessary and incidental to the work which they had contracted to perform, and was distinct and separate from the work of hop picking.

The fact that hop picking was not to begin until two days later does not, we think, affect the question of the defendant's liability. Said the court in Cudahy Packing Co. v. Parramore, 263 U. S. 418, 426, 44 S. Ct. 153, 155 (68 L. Ed. 366, 30 A. L. R. 532): "We attach no importance to the fact that the accident happened a few minutes before the time Parramore was to begin work, and was, therefore, to that extent, outside the specified hours of employment. The employment contemplated his entry upon and departure from the premises, as much as it contemplated his working there, and must include a reasonable interval of time for that purpose."

As against the proposition that the Rogans were employés at the time of the accident, the defendant cites Wells v. Clark & Wilson Lumber Co., 114 Or. 297, 235 P. 283, and Susznick v. Alger Logging Co., 76 Or. 189, 147 P. 922, Ann. Cas. 1917C, 700. But in those cases the plaintiffs were held not to be employés for the reason that no contract of employment had been made with them, and they were but applicants for employment at the time when they sustained personal injuries. It is to be observed, also, that decision in those cases depended upon the construction of provisions of the Workmen's Compensation Act of Oregon (Laws 1913, p. 188), while in the case at bar the court is called upon to construe the provisions of a contract of accident insurance, and to determine the scope of the protection intended to be afforded thereby.

The case differs from the Oregon cases

above mentioned in the further fact that here an employment contract had been entered into which gave the plaintiff the right to direct the movements of the Rogans, and the plaintiff had assumed the exercise of that right before the accident occurred. Said the court in Employers' Indemnity Co. v. Kelly Coal Co., 149 Ky. 712, 149 S. W. 992, 41 L. R. A. (N. S.) 963: "Speaking generally, the relation may be said to exist whenever the employer retains the right to direct not only what shall be done, but how it shall be done"—citing Wood on Master and Servant, § 317, where it is said: "The real test by which to determine whether a person is acting as the servant of another is to ascertain whether, at the time when the injury was inflicted, he was subject to such person's orders and control, and was liable to be discharged by him for disobedience of orders or misconduct."

And although it is generally held in construing Workmen's Compensation Acts that, where an employé sustains an injury from accident on his way to work, before he has reached his employer's premises, the accident will not be said to arise out of or in the course of his employment, yet the decided weight of authority recognizes an exception to that rule in a case where, at the time of the accident, the employé is being transported to or from the work of his employer as a part of the contract of employment. In Sala v. American Sumatra Tobacco Co., 93 Conn. 82, 105 A. 346, employés had been engaged under circumstances practically identical to those under which the Rogans were engaged in the case at bar, and they were on their way to their working place when they sustained injuries which caused their death. Said the court: "Although the decedents, at the time of the accident, had not actually commenced their work upon the tobacco plantation of the defendant company, it is plain that their transportation was a part of the contract of employment with this defendant. * * * The relation that then existed between the women and the American Sumatra Tobacco Company was that of master and servant, and not that of carrier and passenger. At the time they were injured they were laborers in the employ of the tobacco company."

And in Swanson v. Latham, 92 Conn. 87, 101 A. 492, it was held that an injury received by an employé while riding pursuant to his employment to or from his work in a conveyance furnished by his employer is one which arises in the course of the employment. The court said: "Transportation to and from his work was incidental to his employment; hence the employment continued during the transportation in the same way as during the work." So in Littler v. George A. Fuller Co., 223 N. Y. 369, 119 N. E. 554, the court approved the commission's finding, saying: "The vehicle was provided by the employer for the specific purpose of carrying the workmen to and from the place of the employment and in order to secure their services. The place of injury was brought within the scope of the employment because Littler, when he was injured, was 'on his way * * * from his duty within the precincts of the company.'" A similar decision is Lampert v. Siemons, 203 App. Div. 264, 197 N. Y. S. 25.

In Travelers' Ins. Co. v. Wild River Lumber Co. (C. C. A.) 83 F. 977, the application for indemnity insurance represented that the lumber company owned a railroad which it used only for its "own lumbering purposes." It was held that its liability for injuries to commercial travelers, who had come to its premises to take orders for supplying its store, and were being transported over the company's road when the injuries occurred, were within the scope of the company's "own lumbering purposes," within the meaning of the policy, so as to make the insurer liable.

In Dunn v. Trego, 279 Pa. 518, 124 A. 175, the Supreme Court of Pennsylvania, in a case where, owing to a labor shortage at Upland, Pa., laborers were imported from Philadelphia, held that a workman who was engaged to work at Upland was acting in the course of his employment while riding from that place back to Philadelphia, and under the Workmen's Compensation Act (P. L. Pa. 1915, p. 736; Pa. St. 1920, § 21916 et seq.) was entitled to compensation for injuries suffered, on the ground that the transportation was an inducement to enter into the contract of service; the court holding that the employé, when injured, was "'actually engaged in the furtherance of the business of the employer,' within the meaning of the Compensation Law."

The judgment is reversed, and the cause is remanded for further proceedings.