Argued March 3; reversed April 13; rehearing denied May 11, 1943

# LESSER ET AL. *v.* GREAT LAKES
# CASUALTY CO. ET AL.
### (135 P. (2d) 810)

Before Bailey, Chief Justice, and Belt, Rossman, Kelly and Hay, Associate Justices.

*F. S. Senn,* of Portland (Senn & Recken, of Portland, on the brief), for appellants.

*Arthur C. Spencer, Jr.,* of Portland (Maguire, Shields, Morrison & Biggs, of Portland, on the brief), for respondent.

Action by insured upon "owners', landlords', tenants'" policy of public liability insurance issued to them by defendant, indemnifying the insured against loss from liability imposed by law upon the insured for bodily injuries accidently suffered by any person or persons not employed by the assured caused by the ownership, care, maintenance or use of the insured's premises. Mrs. Netta M. Lapham accidently sustained a fractured hip on assured's premises and obtained a judgment, which was paid to her by assured.

The instant case, being tried to the court without a jury, resulted in a judgment of dismissal based upon the trial court's findings of fact and conclusions of law to the effect that, at the time of her injury, Mrs. Lapham was employed by plaintiffs. From said judgment of dismissal, plaintiffs appeal.

KELLY, J. The sole question to be determined in this case is whether the trial court was warranted in finding that at the time of her injury Mrs. Lapham was employed by plaintiffs.

Plaintiffs were the owners of the apartment house in suit known as Park View Apartments in which there were sixteen apartments. Mrs. Lapham and her husband lived there for a year and a half before the accident occurred, occupying an apartment on the first floor at the front of the building. The direct testimony of Mrs. Lapham upon the agreement between herself and plaintiffs, with respect to her services, is as follows:

"Q What arrangements did you have with Mr. Lesser and Johanesen regarding your rent there at the apartment?

A Well, when I went in I was to pay them twenty dollars a month and answer the phone and answer the door and take care of the front lobby. There wasn't anything said about the back, but I always did sweep the back hall out.

Q What was done about the rent in regard to this work?

A Well, I paid them twenty dollars a month.

Q How much was the rent to be if you hadn't done this work?

A Well, there never was anything said about that.

\* \* \* \* \*

Q Did you have any regular time as to when you were to do that work?

A No, no."

On cross-examination, with respect to the agreement between witness and plaintiffs, Mrs. Lapham testified as follows:

"Q \* \* \* \* your duties there were to do certain janitor work and to manage the apartment, is that correct, and in the management of the apartment you would show people apartments that came there looking for them and rent the apartment?

A Yes.

Q And was the rent of these apartments paid to you or did they pay it directly to the other people?

A Well, they paid it direct to me, though that wasn't the understanding as I went in; but they did, I did take the rent.

Q And if anybody called there for an apartment, why, you would take them in and show them around and show them the apartments and rent them to them?

A Yes, but I didn't have the final decision on the renting the apartment; that was up to Mr. Lesser or Mrs. Lesser.

Q But you did show them the apartment?

A I did show it.

Q And then you would contact the other people and advise them and they would have the final say—

A (interrupting) Yes.

Q —as to whether they would rent it.''

Mrs. Johanesen, wife of one of the plaintiffs, testified as to Mrs. Lapham's duties thus:

''Q She [Mrs. Lapham] had no definite hours of going to and from duty.

A No.

Q She was on duty there during the day?

A She was on her own; she never had any time, set days; she could do just whatever she pleased and any time she felt like doing it; and she was sewing for some of the girls and for me too.

Q But her duties there were to answer calls,—

A (interrupting) The telephone.

Q —and to show apartments?

A Well, she was if she felt like doing it.

Q And to, was it the halls that she was supposed to keep clean?

A The lobby only, no halls, no; we used to take care of that also. If she felt like doing the back hall that was her free will, we didn't tell her to.''

On direct examination Mr. John Lesser, one of the plaintiffs, testified concerning Mrs. Lapham's duties, thus:

''Q She [Mrs. Lapham] was getting a reduced rent for doing some work there, is that it?

A Well, not exactly; just for cleaning the lobby and,—

Q (interrupting) What was she supposed to do there?

A Well, she answered the telephone and doors.

Q And kept the lobby in shape.

A Yes.

Q Did she have any regular hours or regular time to do that work?

A No, she was on her own time."

The cross, redirect and recross-examination of plaintiff, Lesser, is as follows:

"Cross examination by Mr. Morrison:

Q Mr. Lesser, you looked after the heating plant there, did you?

A Yes, I do.

Q If anything went wrong with the heating plant or washing machine, Mrs. Lapham would just call you and you would go over there and put it in shape?

A Yes.

Q And her duties were looking after the answering of telephone calls and answering people when they would come to the door and showing apartments and to keep this lobby clean?

A Yes.

Q —doing the janitor work. How was the milk delivered there, and the papers?

A Well, she made arrangements with the milkman. The milkman paid her a quart a day, or something like that, you know; I couldn't tell you.

Q I mean, would the milk be delivered to her and then she would distribute it around to the different tenants?

A Yes, we have a little room there, what they call the grocery room, and the milkman delivered the milk in that room and she took it and,—

Q —and delivered it to the other people?

A  Yes, and she got paid from the milkman.

Q  Would she do the same thing with the newspapers?

A  Newspapers too; she would get an extra paper, you know, for nothing, I guess.

Mr. Morrison: And she,—I think that is all.

Re-direct examination by Mr. Senn:

Q  You think she got a quart of milk free for doing that?

A  I guess she did.

Re-cross examination by Mr. Morrison:

Q  —and probably an extra paper for the same work?

A  Yes.''

A written statement by plaintiff Johanesen, introduced by defendant, as follows:

''Portland, Oregon.
7/29/38

My name is Earl Johanesen. I reside at 555 N. E. Fargo Street, Portland, Oregon. I am half owner of the Park View Apts. located at 616 N. E. Fargo, street Portland Oregon.

We have hired Mr. & Mrs. Lapham to manage and also to do the janitorial work in the Park View Apt. Mrs. Lapham does the light work which she can do such as cleaning the hall rugs etc. For the above outlined work Mr. & Mrs. Lapham receive one half of their rent. The rent comes to $40.00 a month and they pay us $20.00 a month.

E. Johanesen''

The accident occurred at about 11 o'clock a. m., or shortly before, on Monday, July 11, 1938, as Mrs. Lapham was on her way from the laundry room to her apartment and before she had reached the entrance of the lobby. Her mission was to procure a newspaper

from her apartment in order that a boy could gain some information concerning the score in a certain baseball game. The boy lived across the street from the Park View Apartments. His aunt lived in said apartment house.

The laundry room was at the rear of the apartment house and on the first floor thereof. It was equipped with an electric washing machine and stationary tubs. The respective tenants were allotted certain times respectively for using the laundry room and its equipment. The time allotted to Mrs. Lapham was Monday mornings. Pursuant to this arrangement, on the day of the accident, Mrs. Lapham had repaired to the laundry room some time about 9 o'clock in the morning to do the washing for herself and her husband, and when the boy sought the information as to the baseball score, Mrs. Lapham interrupted her laundry operations to secure her newspaper for him.

It is true that Mrs. Lapham testified that if at any time the door bell or the telephone bell had rung she would have answered the same; but it is obvious that no such duty rested upon her during the time set apart to her for using the laundry room for her own personal purposes.

■ The relationship existing between the assured and the injured at the time of the injury determines whether the injury is covered by the policy in suit.

The Supreme Court of Indiana gave consideration to a case involving this rule. The pertinent facts in that case were that on the 30th day of November, 1934, while the policy issued to appellee Peterson by appellant was in full force and effect, the appellee Miers was an employee of his coappellee as a bartender at a salary of eighteen dollars per week; that Miers worked

from 4 o'clock p. m. to 11 o'clock p. m. and was on the payroll of appellee Peterson at the time; that Peterson invited Miers to be his guest on a hunting trip on that day, and used his Ford automobile as a means of transportation; that in returning that afternoon about 2 o'clock, Peterson carelessly, negligently and wantonly drove his automobile from the highway and against a telephone pole, whereby Miers sustained injuries for which he recovered damages. In that case, the policy contained the following exclusive clause:

"4-A Under clause V pertaining to liability any employees of the assured and/or his family or members of his household are excluded."

■ In that case, speaking through Judge Tremain, the Indiana Court say:

"An employee is one engaged in the business of his employer. He is not one attending to his own business or engaged in pursuits of pleasure or recreation separate and apart from his employment. The appellee Miers owed to his employer the duty of being at his place of business from 4 o'clock P. M. to 11 o'clock P. M. During the remainder of the twenty-four hours he was free to go where he pleased and to engage in his own pursuits of business or recreation.

\*          \*          \*          \*          \*

It is reasonable to conclude that the parties to the insurance contract intended that it should deny coverage as far as the appellee Miers is concerned for the period from 4 o'clock P. M. to 11 o'clock P. M., but otherwise when Miers was not actually engaged as the servant of Peterson under his control and direction and subject to his orders." *Hoosier Casualty Co. v. Miers, et al.,* 217 Ind. 400, 27 N. E. 2d 342.

The same rule of construction is applied in *Braley Motor Co. v. Northwest Casualty Co.,* 184 Wash. 47, 49 P. 2d 911, 913, and *Sills v. Sorenson,* 192 Wash. 318, 73 P. 2d 798.

■ In one sense an independent contractor in the performance of his contract may be said to be employed by the other party to the contract, but that is not the meaning of the term as used in the policy in suit. *Hardware Mutual Casualty Co. v. Hilderbrandt,* 119 F. 2d 291.

A casual employee assisting in the work of removing leaves from the gutters of a roof is employed, but it has been held that such an employee was not excluded from the coverage of the policy by the restrictive words "not employed" etc. *State ex rel. Maryland Casualty Co. v. Hughes, et al.,* 349 Mo. 1142, 164 S. W. 2d 274; *Daub, et al. v. Maryland Casualty Co.* (Mo. App.) 148 S. W. 2d 58, 59. See also *State Farm Mutual Automobile Insurance Co. v. Brooks, et al.,* 43 F. Supp. 870, and authorities there cited.

■ The testimony of Mrs. Lapham, as to the contract or agreement prescribing her duties, and as to the assignment of Monday mornings as the time for her to make use of the laundry room and its equipment in attending to her own personal affairs, is not contradicted. It is clear to the writer that when she was acting pursuant to the rules applicable to tenants in utilizing the time assigned to her for laundering purposes and during that time temporarily digressed to secure a newspaper from her apartment to accommodate the boy, who was neither a tenant, a prospective tenant, nor an employee of the insured, she was not employed by insured in the sense properly attributable

to such term in construing the restrictive clause in the policy in suit.

Taking that view, the writer is of the opinion that there is no testimony to support the trial court's finding that at the time of the accident Mrs. Lapham was employed by the assured. The uncontradicted testimony is to the effect that, when injured, Mrs. Lapham was not employed by plaintiffs; and that being so, the conclusion of law follows that plaintiff should recover judgment against defendant in the sum of $2,000 because of plaintiffs' loss of that amount imposed by law upon plaintiffs.

The first point suggested in defendant's brief is that an insurance company has the unquestioned right to insert as many reasonable provisions as it deems proper or necessary in the policy exempting it from liability.

■ In the absence of a statutory provision to the contrary, that may be conceded; and in the instant case no statute forbids the use of the restrictive clause in the policy in suit.

■ The second point presented by defendant in its brief is that resort to construction is only permissible in cases of ambiguity and the plain meaning of language used cannot be disregarded in order to grant coverage when the terms of the policy exclude it.

"The words 'any person or persons' are most comprehensive and unambiguous. The restrictive words 'not employed' are susceptible of many meanings, and therefore necessarily introduce ambiguity and leave the clause open to construction." Daub v. Maryland Casualty Co., supra.

The third point made by defendant in its brief is stated thus: As a general rule a person, who is given

possession of premises as part of his compensation, is held to occupy them as a servant and not as a tenant.

■ In the case at bar, the services performed by Mrs. Lapham for plaintiffs was part of the rental for the apartment occupied by her and her husband and those services could well be deemed to be merely incidental to the relation of landlord and tenant.

In the case of *Turner v. Mertz*, 3 F. (2d) 348, 39 A. L. R. 1140, cited to this point, the occupancy by John L. Turner [plaintiff's husband] of the premises were incidental to the employment for which he was paid by Mertz $75 per month and was accorded the use of the premises occupied by him. Moreover, after Mertz leased the premises to King, plaintiff's husband sought to rent the premises for cash rental, but King would not agree to that. Then plaintiff's husband remained upon the premises and for the occupancy of same attended the furnace and carried out the trash. The action was for damages caused by eviction without service of notice to quit. The controlling feature of the contract between plaintiff's husband and Mertz and the later agreement with King was the performance of services by plaintiff's husband, and the refusal of King to rent the premises to him.

The fourth point urged by defendant is that where persons live on premises as a part of their employment and are subject to call, injuries occurring as a result of the condition of the premises are held to arise out of and in the course of their employment.

■ As heretofore stated, we think that, under the terms of her contract, Mrs. Lapham was not subject to call during the time assigned to her for using the laundry room and equipment especially while she was actually using such room and equipment. That time was

definitely set apart to her for her personal laundry work over which, while their contract was in force, the plaintiffs had not nor could they have any voice or control.

To its fourth point, defendant cites the case of *State Compensation Insurance Fund v. Industrial Accident Commission,* 194 Cal. 28, 227 P. 168. In that case a young lady employed as a maid at a hotel, where she lived, was leaving the hotel on her day off and was injured as she was passing through the exit which, as an employee, she was required to use. Her injury was held to be compensable.

*Employers' Liability Assurance Corporation v. Industrial Accident Commission,* 37 Cal. App. (2d) 567, 99 P. 2d 1089, is also cited by defendant. In that case Mrs. Burnett, who was employed by Chalmers G. Graham as a cook and was required to live at her employer's residence, and who, as a part of her compensation, received board and room, was injured on Thursday, June 1, 1939. This was normally her day off. Her employer customarily employed a maid, but the maid had left the employment the preceding Saturday so that Mrs. Burnett's duties during this period were increased. Mrs. Burnett testified that, because of the absence of the maid, on the day in question she worked until 11 or 11:30 a. m. and told her employer she would return early that evening to wash the dishes. She returned to her employer's residence a little before 8 p. m. She put an apron over her street dress and washed the dinner dishes. She testified that she was then on call, that she would have answered the telephone or the door bell had the necessity arisen and that she was expecting a call from her employer to take care of the Graham child. While she was waiting

she noticed that her dress was a little long. The mirror in her room was not adjustable. In order to more clearly observe the hem of her dress, she stood on a stool. While engaged in shortening her dress, she slipped and fell fracturing her left ankle and dislocating her left elbow. The commission held that these injuries occurred in the course of and arose out of the employment. This action was affirmed by the court.

In support of the court's holding, reference is made to *Larson v. Industrial Accident Commission,* 193 Cal. 406, 224 P. 744, and *State Compensation Insurance Fund v. Industrial Accident Commission,* 194 Cal. 28, 227 P. 168, wherein the doctrine is announced that where an employee is required to live on the employer's premises any injury received while the employee is making a reasonable use of such premises is in the course of the employment even though received during the employee's leisure time.

We quote from the opinion:

"The theory advanced in these cases is that board and room are part of the employee's compensation which is being earned at all times while the employee is on the premises, and, that, therefore, the earning and collection of such compensation is as much a part of the employment as is the performance of service, and is reasonably incidental thereto." *Employers' Liability Assurance Corp. v. Industrial Accident Commission,* supra.

The above stated theory is not applicable to the case at bar where the injured party paid partly in cash and partly in service for the use of an apartment with a distinct understanding that she would have the privilege of a tenant with respect to the use of the laundry room and equipment, and, in exercising that privilege, was injured.

*Doyle's Case,* 256 Mass. 290, 152 N. E. 340, is also cited by defendant. There, the claimant, Grace M. Doyle, was employed as a nurse by the Wiswall Sanatorium at a wage of $40 a month and her maintenance, that is her board and room. On the day of the accident, which would have been a "day off", if the accident had not occurred, and nothing intervened, she worked until 9 o'clock p. m. and then went to her room which was reserved for employees. In attempting to go through the entryway from her room which was unlighted to the bathroom which was also unlighted, she walked into the flight of stairs, fell and was injured.

> "She had to be at breakfast on the day assigned to her as the day off and there was a practice there sometimes to tell her as late as seven or eight o'clock on the morning that she would have to work that day and take some other day off.
>
> &ast; &ast; &ast; &ast; &ast;
>
> As regards her day off she would not know definitely until sometime in the morning of that assigned day whether the day would be hers to have free or not."

The following is an additional excerpt from the opinion:

> "The finding that the accident arose out of and during the course of the employment is not inconsistent with Rourke's case, 237 Mass. 360, 129 N. E. 603, 13 A. L. R. 564, Bell's Case, 238 Mass. 46, 130 N. E. 67, and Babineau's Case (Mass.) 150 N. E. 4, because, on the facts in each of those cases the employee was not at the time of the accident in the active service, although in the general employment of the employer." Doyle's Case, supra.

The case at bar comes within the doctrine of the three cases thus mentioned in the excerpt last above quoted.

*Favorite v. Kalamazoo State Hospital,* 238 Mich. 566, 214 N. W. 229, is also cited by defendant. In that case, the claimant Daisy M. Favorite was employed as a nurse in the defendant hospital. She and the other nurses lived in a dwelling on the hospital grounds called the Nurses' Home, located about 20 rods from the building in which she worked. A concrete sidewalk led from one of these buildings to the other. Claimant's regular hours of work were from 8 in the morning until 8 at night, but she was subject to be called in an emergency at any time and she could not absent herself from the grounds of the home without permission after 10 at night. On the evening of January 18, 1926, claimant left the place of her employment at 8 o'clock to go to the home; that in passing along said walk she slipped and fell on the icy surface thereof and sustained quite severe injuries.

In the Favorite case, supra, it is obvious that claimant was subject to the control and direction of her employer at the very moment of her injury. That was not the case with regard to Mrs. Lapham when she was injured.

*Giliotti v. Hoffman Catering Co.,* 246 N. Y. 279, 158 N. E. 621, 56 A. L. R. 500, 501, is also cited by defendant. There, plaintiff's decedent, Michele Giliotti, was employed as chef by the Hoffman Catering Company, Inc., which operated Hoffman's Inn at Valley Stream, New York, at a weekly wage of $50 together with room and board. In the opinion it is stated:

"He was engaged, not as workmen often are, from day to day, but for a definite term. His status was practically that of a domestic servant, in whose case it is an implied part of the contract of the employment that the employee shall sleep on the

premises. He slept in a special section of the hotel provided for the help, in a room that was solely his. In the early morning of Monday, October 26, 1925, a fire occurred in the hotel from causes unknown. Giliotti had retired to his room at the end of the day's work and while there was suffocated to death by the fire. Monday was his day off, and he was at liberty to leave when his work on Sunday night was finished, but he might, and often did, remain in his room for the night.''

After further discussion, the opinion is concluded with the following statement:

"It is of little consequence whether Giliotti had his trousers on or off, or was preparing for bed, or to leave the premises. He was where his employment took him at the time, and was exposed to a risk arising out of such employment.'' Giliotti v. Hoffman Catering Co., supra.

In the case at bar, when Mrs. Lapham was injured, she was where her privilege as a tenant took her.

Defendant's fifth point is set forth in its printed brief thus:

"Nor does the status of employee change over to being merely a tenant or one not employed by reason of the fact that the employee is at the moment of injury engaged on some task or errand for himself.''

The foregoing statement is pertinent to a case where only a contract of employment is to be considered; but, in the case at bar, there was a dual relationship, namely, that of employer and employee and that of landlord and tenant.

To defendant's fifth point, it cites *Shapiro v. Employers' Liability Assurance Corp.*, 139 Misc. Rep. 454, 248 N. Y. S. 587. In that case, it is stated that

in New York the limitation on defendant's liability, excluding loss suffered on account of injuries to employees of assured, has been construed to exclude such claims as would entitle such person to compensation under the Workmen's Compensation Law. It is further stated that—

"Any other construction of the policy would result in the creation of a third class of persons not covered by the policy—employees injured when not engaged in their employment."

The action was brought upon a general liability insurance policy, to recover the amount of a judgment together with expenses, paid by the assured in consequence of injuries sustained by the assured's janitress, Lena Walsh. The janitress, Lena Walsh, received as part of her compensation, free use of a basement apartment. Returning home from shopping on September 14, 1921, she fell into an open hatchway in the basement and suffered injuries for which she had recovered against the assured. It was held that Miss Walsh was on duty whenever she was on the premises, because the terms of the employment required her presence there. There was no distinct stipulation in her contract that at a given time she had the privilege of a tenant to engage in a personal pursuit, namely, laundering, as in the case at bar.

*Melham v. Watertown Sash & Door Co.*, 67 S. D. 254, 291 N. W. 735, is also cited. In that case, the printed provisions of the policy by paragraph 5, purported to apply to personal injuries sustained by the president and vice-president, secretary or treasurer of the employer or other officer, of a corporation. To modify this contract, the parties inserted the words,—

"The Officers of the Corporation are not included under the coverage of this policy."

The distinction between that case and the one at bar is that the term "officers of the corporation" is not ambiguous. It designates a class the identification of which is not susceptible of different results. As stated, the term "employed" is not unambiguous but imports different classes.

The sixth and final point expressed in defendant's brief states that the above rulings [referring, of course, to the cases cited in its brief] are in accord with cases of many types holding persons to be employees either before they started their labor or after it had ceased. To this point, defendant cites: *E. Clemens Horst Co. v. Hartford Accident & Indemnity Co.,* 27 F. 2d 42 (C. C. A. 9); *Putnam v. Pacific Monthly Co.,* 68 Or. 36, 130 P. 986, 136 P. 835, 45 L. R. A. (N. S.) 338, L. R. A. 1915 F, 782, Ann. Cas. 1915 C, 256; *Lamm v. Silver Falls Timber Co.,* 133 Or. 468, 277 P. 91, 286 P. 527, 291 P. 375; and *Green v. Travelers Ins. Co.,* 260 App. Div. 116, 21 N. Y. S. 2d 216. These cases recognize the rule that an employee, upon whom an injury is inflicted while being conveyed to or from his work in a conveyance furnished by his employer as an incident of the contract of employment, is entitled to compensation.

In *Putnam v. Pacific Monthly Co.,* supra, on rehearing, it was held that the deceased, Mabel Putnam, for whose death in an elevator damages were sought, was as much a passenger as any other person using the elevator, notwithstanding the fact that Miss Putnam was employed by defendant as a stenographer and that the place of her employment was the fourth floor of a building in which the elevator was built and operated for the use and benefit of defendant. It was there expressly held she was not the servant of the defendant until it was time for her to begin such service.

■ ▪ In the trial court, it was stipulated that if plaintiffs should prevail, the sum of $250 would be a reasonable sum to allow as attorney's fee for prosecuting this cause. In cases of this character, plaintiffs are entitled to a further sum as attorney's fee for prosecuting the case upon appeal. One hundred dollars is a reasonable sum to be so allowed.

The judgment of the circuit court is reversed and this cause is remanded with instructions to enter a judgment against defendant in favor of plaintiffs in the sum of $2,000; in the further sum of $250 attorney's fee for prosecuting the case in the circuit court; in the further sum of $100 for prosecuting this appeal, and for the costs and disbursements incurred in both the circuit and the supreme courts.