**PACIFIC EMPLOYERS INSURANCE COMPANY, a corporation, Appellant,**

v.

**GILT EDGE DAIRY, a corporation; Edna Grider; and American Employers' Insurance Company, a corporation, Appellees.**

**No. 4922.**

United States Court of Appeals, Tenth Circuit.

Jan. 7, 1955.

Looney, Watts, Ross, Looney & Nichols, Oklahoma City, Okl., on the brief, for appellant.

Coleman Hayes, Oklahoma City, Okl., on the brief for appellee, American Employers' Ins. Co.

T. R. Benedum, Norman, Okl., on the brief for appellee, Gilt Edge Dairy.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The question presented by this appeal is which, if either, of two casualty insurance policies covers a loss sustained by the insured, Gilt Edge Dairy.

The appellant, Pacific Employers Insurance Company, issued its standard workmen's compensation and employers' liability policy, in which it agreed to assume the liability of Gilt Edge to its employees under the Workmen's Compensation Law of the State of Oklahoma, 85 O.S.1951 § 1 et seq.; and to indemnify it "against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed * * *"

The appellee, American Employers' Insurance Company, issued its comprehensive liability policy, in which it agreed to pay on behalf of the insured all sums which insured "shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons"; except liability for which the insured or its insurer "may be held liable under any workmen's compensation law"; or for liability for "bodily injury to or sickness, disease or death of any employee of the insured, while engaged in the employment of the insured." The policy also pertinently provided that if other valid insurance exists "for such bodily injury, sickness, disease or death or such injury to or destruction of property, this policy shall be null and void with respect to such specific hazard otherwise recovered"; provided, however, that if the applicable limits of this insurance exceeded the applicable limits for such other valid insurance, then this policy should cover such excess liability.

While these policies were in force, and on November 21, 1950, Edna Grider was employed by the insured Dairy at its plant in Norman, Oklahoma. About 4:45 on the afternoon of that day, she entered the hardening freezer at the plant where she was working to buy some ice cream for her own use. While inside the freezer, the door in some way became locked and she was injured while extricating herself. Her claim for workmen's compensation was denied, the State Industrial Commission specifically finding that the injury did not arise out of and in the course of her employment; that she was not acting within the scope of her employment or for the benefit of her employer, but was acting as a customer of the employer.

After this order became final, she instituted an action in the District Court of Oklahoma County against Gilt Edge to recover damages by reason of its

alleged negligence. The suit was settled by agreement of the parties without prejudice to the rights of the two insurance companies to deny liability under their respective policies. Whereupon, this declaratory action was commenced in the federal court for the Western District of Oklahoma by American against Pacific, the Dairy and Grider, for a declaration of nonliability under its comprehensive liability policy.

Issues having been joined on the pleadings and agreements of the parties, the court held Pacific primarily liable and American secondarily liable under their respective policies. Pacific has appealed from this judgment, contending simply that the findings and conclusions of the State Industrial Commission are res judicata and decisive of the issues of liability. The argument is that since, under the binding order of the Commission, Grider's injuries did not arise out of and in the course of her employment, its policy does not cover the risk; and that since she occupied the status of a customer—a member of the general public, the risk is covered by American's comprehensive policy. It is said that there can be no overlapping or primary-secondary coverage, as the trial court held.

To support its contention that American's policy covers the risk, appellant relies primarily upon cases generally to the effect that an employee is not engaged in his employment within the meaning of exclusionary provisions in policies like American's, while riding to and from his employment, or while not otherwise actually engaged in the pursuance of his duties as an employee. Boyle-Farrell Land Co. v. Standard Accident Ins. Co., 8 Cir., 24 F.2d 55; Lesser v. Great Lakes Casualty Co., 171 Or. 174, 135 P.2d 810; Hoosier Casualty Co. v. Miers, 217 Ind. 400, 27 N.E.2d 342. See also B & H Passmore Metal & Roofing Co. v. New Amsterdam Casualty Co., 10 Cir., 147 F.2d 536, Tri State Casualty Co. v. Loper, 10 Cir., 204 F.2d 557; I-L Logging Co. v. Manufacturers & Wholesalers Indemnity Exchange, Or., 273 P.2d 212.

The finding of the Commission to the effect that Grider's injuries did not arise out of and in the course of her employment within the meaning of the Workmen's Compensation Act is basic to its adjudication of nonliability under the Act—a matter clearly within the exclusive jurisdiction of the Commission. We accept the adjudication of the Commission on the question of liability under the Oklahoma Workmen's Compensation Law and if the limits of Pacific's liability under its policy are measured by the incidence of that law, we should accept the order of the Commission as conclusive of Pacific's contractual liability. But this suit does not involve coverage under the Oklahoma Workmen's Compensation Law. It involves coverage under two insurance contracts, a matter not committed to nor decided by the Commission. The issue of coverage depends upon the interpretation of the contracts as to which the subsidiary findings of the Commission are merely gratuitous and not binding on any party here, especially American.

By its clear terms, Pacific's policy was intended not only to cover liability imposed by the Oklahoma Workmen's Compensation Law, but to also indemnify the insured employer against loss by reason of liability imposed upon him by law for damages on account of injury to employees "as are legally employed." American Mutual Liability Ins. Co. v. Duesenberg, 214 Ind. 488, 14 N.E.2d 919, 16 N.E.2d 698, 117 A.L.R. 1293; Edward Stern & Co. v. Liberty Mutual Ins. Co., 269 Pa. 559, 112 A. 865; Carolina Veneer & L. Co. v. American Mutual Liability Ins. Co., 202 S.C. 103, 24 S.E.2d 153. In the language of the Oklahoma Courts, "The policy was issued to an employer who employed workmen falling within the Workmen's Compensation Law to whom he might become liable under and by virtue of that law and to whom he might become

liable in tort or for negligence." Fidelity & Casualty Co. of New York v. Gray, 181 Okl. 12, 72 P.2d 341, 345. The purpose of the second insuring clause in the policy was to afford coverage to Gilt Edge for injuries to employees growing out of the business carried on by Gilt Edge, where the injury did not occur to the employee in the course of his employment and hence would not be covered by the Workmen's Compensation Act and the first insuring clause.

The two policies were designed to provide complete coverage for the insured's operations. They assumed two entirely separate and distinct risks, one, the risk incident to the employment of employees, the other, liability to the general public. Lumber Mutual Casualty Ins. Co. v. Stukes, 4 Cir., 164 F.2d 571; State Farm Mutual Automobile Ins. Co. v. Braxton, 4 Cir., 167 F.2d 283; State Farm Mutual Automobile Ins. Co. v. Brooks, 8 Cir., 136 F.2d 807. And, the liability under the respective policies is determinable by a construction of the language used to delineate coverage, or in other words, to describe the risk assumed.

If, at the time of the injury, Grider was "legally employed" within the meaning of Pacific's policy, we need not determine whether she was injured while "engaged in the employment" of the insured within the meaning and intendment of American's policy, for, if Pacific's policy covers the risk, American's policy is clearly inoperative, there being no excess liability. Bennett v. Preferred Accident Ins. Co. of New York, 10 Cir., 192 F.2d 748.

If, as we have seen, the use of the words "such employees as are legally employed" was intended to provide coverage beyond the narrow limits of liability imposed by the Workmen's Compensation Laws, it seems only reasonable and rational to say that to come within the coverage of Pacific's policy, the injury need not arise out of or in the course of employment. Nor must the injury have occurred while actually engaged in the employment of the insured. It

is sufficient, we think, if it can be said that the injury resulted from a hazard reasonably incident to or in some way casually connected with her employment. Given this construction, the two policies provide the complete and separate coverage they were intended to effect.

While it is not clear from the record whether, at the time of her injury at 4:45 in the afternoon, Grider had ceased her day's work, or whether she had temporarily departed from her duties to attend to personal affairs, it is decisively clear that she had not departed from the premises where she was employed and that the hazard to which she was subjected and which brought about her injury was incident to and reasonably associated with her status as one "legally employed".

Our facts and contract are not like Boyle-Farrell Land Co. v. Standard Accident Ins. Co., supra, where the policy covered liability imposed by law for damages on account of bodily injuries sustained by reason of the operation of the business by any employee. "The policy" said the court, "did not cover all the relations of employment, but limited the liability of the defendant to the relationship that existed while the employee was actually engaged in the work of his employment." [24 F.2d 56.] Nor is this case like Lesser v. Great Lakes Casualty Co., supra, where the contract covered liability imposed by law for bodily injuries suffered by any person "not employed by the assured". [171 Or. 174, 135 P.2d 811.] The injured party paid for her apartment partly in cash and partly in service, with the understanding that she would have the privilege of all tenants for the use of the laundry room and equipment. She was injured while temporarily digressing from the use of the laundry facilities to perform a duty not incident to the services performed for the use of the apartment. The court rightly concluded that she was not employed within the meaning of the policy. And, our case is clearly distinguishable from Hoosier Casualty Co. v. Miers, supra,

where an employee, injured while the guest of his employer on a hunting trip, was held not to be an employee within the meaning of a policy which covered liability imposed by law upon the insured for damages on account of bodily injuries upon any person, except employees of the insured or his family. The court very properly concluded that the injury was wholly disconnected and foreign to the relationship of employer and employee.

Unlike those cases, here there was a reasonable relationship between the injury and the employment. We conclude, therefore, that Grider was "legally employed" within the meaning of Pacific's policy, and the judgment of the trial court is affirmed.