Submitted January 15; judgment of conviction on Counts 3 and 5 reversed, remanded for resentencing, otherwise affirmed December 26, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RANDY KENT CLAY,
*Defendant-Appellant.*

Lane County Circuit Court
16CR56503; A164419

457 P3d 330

Defendant was convicted of two counts of first-degree sexual abuse, ORS 163.427, one count of third-degree sexual abuse, ORS 163.415, and two counts of using a child in a display of sexually explicit conduct ("display"), ORS 163.670. On appeal, he assigns error to the trial court's denial of his motion for judgment of acquittal on the display counts, arguing, among other things, that ORS 163.670 does not apply to observing oneself sexually abusing a child or observing a child's sexual or intimate parts in connection with one's own sexual abuse of the child. *Held*: An audience of one is sufficient for the crime of display under ORS 163.670; however, the statute applies only when a person employs, authorizes, permits, compels, or induces a child to participate or engage in sexually explicit conduct "for" any person to observe or to record in a visual recording. In choosing that language, the legislature intended to capture conduct aimed at observation or visual recording, such as child pornography and live sex displays. A person's observation of his own sexual abuse of a child, or observation of a child's sexual or intimate parts incidental to his own sexual abuse of a child, falls outside the statute. In this case, no reasonable juror could find that the purpose of defendant's conduct was observation, so the trial court erred in denying defendant's motion for judgment of acquittal on the display counts.

Judgment of conviction on Counts 3 and 5 reversed; remanded for resentencing; otherwise affirmed.

Mustafa T. Kasubhai, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Shawn Wiley, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jonathan N. Schildt, Assistant Attorney General, filed the briefs for respondent.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.

AOYAGI, J.

Judgment of conviction on Counts 3 and 5 reversed; remanded for resentencing; otherwise affirmed.

**AOYAGI, J.**

After sexually abusing two teenaged girls, defendant was tried and convicted of two counts of first-degree sexual abuse, ORS 163.427, one count of third-degree sexual abuse, ORS 163.415, and two counts of using a child in a display of sexually explicit conduct ("display"), ORS 163.670. On appeal, defendant assigns error, among other things, to the trial court's denial of his motion for judgment of acquittal on the two display counts. For the reasons that follow, we conclude that the trial court erred in denying defendant's motion for judgment of acquittal. Accordingly, we reverse as to the display counts (Counts 3 and 5), remand for resentencing, and otherwise affirm.

FACTS

In reviewing the denial of a motion for judgment of acquittal, we view the facts in the light most favorable to the state. *State v. Makin*, 360 Or 238, 240, 381 P3d 799 (2016). We state the facts in accordance with that standard, noting that, in this case, all of the relevant facts come from statements and testimony of the two victims. The legal issue presented requires us to describe the facts in some detail.

The victims, E and R, are sisters. At the relevant time, defendant was in his 60s and was dating the victims' grandmother. Defendant, who was a photographer, arranged to have both girls participate in "photoshoots" with him, ostensibly to create modeling portfolios for the girls and for his own use in drawing their portraits.

E, aged 13, went to defendant's apartment twice for photoshoots. The first time, her grandmother was present but stayed in a separate room. Defendant selected clothing for E to wear and directed E how to pose; many poses made E uncomfortable. Defendant paid her $50. The second time, defendant and E were alone, and defendant sexually abused E. After taking photographs for a while, defendant asked E to put on a dress and to remove her bra and underwear, which she did. Defendant told E that he wanted to put lotion on her legs because "it would be good for shine." Defendant kneeled between E's knees, such that she could not close her legs. Defendant started putting the lotion on E's legs, "[a]nd

then he just kept going further and further up," until he was rubbing the lotion onto her vagina and buttocks. He "kept rubbing" and was "constantly touch[ing]" her. During that time, defendant did not ask E to strike any poses—he just kept touching her. Defendant then took E's hand and placed it on his erect penis over his shorts. E pulled her hand away and went to the bathroom to change into her own clothes. Before E left, defendant paid her $100, telling her that the extra $50 was for the sexual contact. Defendant told E not to tell anyone.

R, aged 16, also did a photoshoot at defendant's apartment. No one else was present, and defendant locked the doors. At one point, defendant asked R to remove her bra and underwear; she removed her bra but refused to remove her underwear. Sometime thereafter, defendant told R that he was going to rub some "lotion oil stuff" on her to give her "a shine." R was lying on the ground. Defendant was on top of one of R's legs at first, and then he moved between her legs so that her legs were spread, and he was on his knees between them. R could not have closed her legs given defendant's position. Defendant started rubbing the lotion on R's feet, rubbed it "up to [R's] knees, and then he was going up further." R could not find the words to say stop. Defendant rubbed R's hips and "started *** putting his fingers through [R's] underwear." He complimented R on her underwear and pulled the underwear aside. R could feel the skin of his hand when he pulled aside her under-wear. Defendant complimented R on the appearance of her vagina, and then started rubbing her vagina, which he con-tinued for some time. Defendant commented on the fact that R had her period (she was wearing a tampon) but said "we can work around that." Defendant eventually finished what he was doing and got up. During the abuse, defendant had not instructed R to assume any poses. Later, when R was ready to leave, defendant paid her $100 and told her not to tell anyone.

Both E and R reported to multiple people that defendant had sexually abused them. A grand jury indicted defendant on five criminal offenses. Based on his conduct during E's second photoshoot, defendant was charged with first-degree sexual abuse, ORS 163.427, for touching E's

vagina (Count 1); first-degree sexual abuse, ORS 163.427, for causing E to touch his penis (Count 2); and using a child in a display of sexually explicit conduct, ORS 163.670, for causing E to engage in sexually explicit conduct "for a person to observe" (Count 3). Based on his conduct during R's photoshoot, defendant was charged with third-degree sexual abuse, ORS 163.415, for touching R's vagina (Count 4); and using a child in a display of sexually explicit conduct, ORS 163.670, for causing R to engage in sexually explicit conduct "for a person to observe" (Count 5).[1]

Defendant went to trial on all five charges. At the close of the state's evidence, he moved for a judgment of acquittal on Counts 3 and 5, the display charges. "A person commits the crime of using a child in a display of sexually explicit conduct if the person employs, authorizes, permits, compels or induces a child to participate or engage in sexually explicit conduct *for any person to observe* or to record in a visual recording." ORS 163.670(1) (emphasis added).[2] "Sexually explicit conduct" includes a broad array of sexual conduct, including the "[l]ewd exhibition of sexual or other intimate parts." ORS 163.665(3). In support of his motion, defendant argued that ORS 163.670 does not apply to a person's observation of a victim's sexual or intimate parts in the course of sexually abusing the victim. Otherwise, defense counsel argued, "every act of sexual abuse that involves a minor would be lewd exhibition," as "I don't think it is possible to engage in sexual abuse without observing that you are engaging in sexual abuse." The state opposed the motion, arguing that a person could sexually abuse someone "at the same time" that he was "making a lewd exhibition for himself to observe."

The trial court denied defendant's motion for judgment of acquittal. The jury subsequently convicted defendant

---

[1] As relevant here, it is first-degree sexual abuse to subject a person who is "less than 14 years of age" to "sexual contact," ORS 163.427(1)(a)(A), and it is third-degree sexual abuse to subject a person who is "incapable of consent by reason of being under 18 years of age" to "sexual contact," ORS 163.415(1)(a)(B).

[2] Although defendant is a photographer and took photographs of the victims at his apartment, there is no evidence that he took any photographs of sexually explicit conduct. The state did not allege or seek to prove that defendant caused the victims to engage in sexually explicit conduct for defendant "to record in a visual recording." ORS 163.670(1).

of all five charges. As to the display charges, the verdict form specified that Count 3 was based on "[l]ewd [e]xhibition of [E]'s genitals" and that Count 5 was based on "[l]ewd [e]xhibition of [R]'s vagina."

At sentencing, the trial court imposed the mandatory minimum sentence on each count and ordered all sentences to be served consecutively. Defendant was thereby sentenced to 75 months on Count 1 (first-degree sexual abuse); 75 months on Count 2 (first-degree sexual abuse); 70 months on Count 3 (display); 12 months on Count 4 (third-degree sexual abuse); and 300 months on Count 5 (display). For Count 5, the court applied ORS 137.690. ORS 137.690a provides that any person convicted of a "major felony sex crime" who has one or more previous convictions of a "major felony sex crime[]" shall be imprisoned for a mandatory minimum term of 25 years." ORS 137.690b designates four "major felony sex crimes": first-degree rape, ORS 163.375; first-degree sodomy, ORS 163.405; first-degree unlawful sexual penetration, ORS 163.411; and using a child in a display of sexually explicit conduct, ORS 163.670. Defendant's display conviction on Count 3 was treated as a previous conviction of a major felony sex crime, triggering a mandatory minimum 25-year prison term on Count 5.

Defendant appeals the judgment. In his first and second assignments of error, defendant contends that the trial court erred in denying his motion for judgment of acquittal on Counts 3 and 5. In his third assignment of error, defendant challenges his 300-month sentence on Count 5 as violating Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. In a supplemental assignment of error, defendant argues that the trial court erred in giving a nonunanimous verdict instruction to the jury. We begin with the first and second assignments of error and, because they are dispositive, do not reach the third assignment of error. We reject the supplemental assignment of error without discussion.

## ANALYSIS

ORS 163.670(1) provides that "[a] person commits the crime of using a child in a display of sexually explicit

conduct if the person employs, authorizes, permits, compels or induces a child to participate or engage in sexually explicit conduct for any person to observe or to record in a visual recording." Defendant argues that, although sexually abusing a child is obviously a crime, observing the child in the course of sexually abusing her is not a separate crime under ORS 163.670(1). The state disagrees.

Because defendant's argument raises a question of statutory construction, we examine the text of the disputed provision, the statutory context, and any helpful legislative history to determine the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (setting out our standard procedure for statutory construction); *see also Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) (We are "responsible for identifying the correct interpretation [of a statute], whether or not asserted by the parties."). Unless the statute indicates otherwise, we assume that the legislature intended words of common usage to have their "plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

Under ORS 163.670, the crime of display has four elements:

(1)  the defendant employs, authorizes, permits, compels or induces;[3]

(2)  a child;

(3)  to participate or engage in sexually explicit conduct;

(4)  for any person (a) to observe or (b) to record in a visual recording.

Defendant does not dispute that, as to both Counts 3 and 5, the state's evidence was sufficient to prove the first three elements of display. It is the fourth element that is the subject of dispute and, therefore, the focus of our analysis.

We first examine the statutory text. For a person to be convicted of violating ORS 163.670, the state must prove that the person caused a child to participate or engage in

---

[3] For ease of reference only, we use "causes" as shorthand for "employs, authorizes, permits, compels or induces."

sexually explicit conduct "*for* any person to observe or to record in a visual recording." (Emphasis added.) The word "for" creates a functional relationship between the person's behavior—"employ[ing], authoriz[ing], permit[ting], compel[ling] or induc[ing] a child to participate or engage in sexually explicit conduct"—and the person's purpose in engaging in that behavior—"for any person to observe or to record in a visual recording." ORS 163.670; *see also Webster's Third New Int'l Dictionary* 886 (unabridged ed 2002) (defining "for" to mean "as a preparation toward * * * or in view of"; "in order to bring about"; or "so as to secure as a result"); *Merriam-Webster's Collegiate Dictionary* 454 (10th ed 1999) ("for" is "used as a function word to indicate purpose" or "used as a function word to indicate an intended goal"); *American Heritage Dictionary of the English Language* 684 (5th ed 2011) ("for" is "[u]sed to indicate the object, aim, or purpose of an action or activity").[4]

That is, ORS 163.670 does not provide that a person commits the crime of display when the person causes a child to participate or engage in sexually explicit conduct *and* any person observes or visually records the conduct. It expressly requires that the person cause a child to participate or engage in sexually explicit conduct "for" any person to observe or to visually record. Thus, based on the text alone, it appears that the legislature intended to address conduct committed for the purpose of observation or visual recording.

Turning to context, it is significant to note that display is one of the most serious crimes in Oregon. It is a Class A felony. ORS 163.670(2). By point of comparison, child sexual abuse—which, unlike display, requires sexual intercourse or sexual contact—is a Class B felony, Class C felony, or Class A misdemeanor, depending on degree. ORS 163.427 (first-degree sexual abuse); ORS 163.425 (second-degree sexual abuse); ORS 163.415 (third-degree sexual abuse). Not only is it a Class A felony, but, as previously

---

[4] *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296 n 7, 301 n 13, 337 P3d 768 (2014) (The court "most often looks to the definitions provided in *Webster's Third New Int'l Dictionary* (unabridged ed 2002)," but, "[u]nless the legislature is shown to have chosen its words in reliance on a particular dictionary definition of them, no particular dictionary is 'authoritative' or otherwise controlling.").

discussed, display is one of only four crimes designated a "major felony sex crime" under Ballot Measure 37, codified in ORS 137.690b (designating first-degree rape, first-degree sodomy, first-degree unlawful sexual penetration, and display as Oregon's major felony sex crimes). Someone convicted twice of a "major felony sex crime" is subject to a mandatory minimum term of 25 years' imprisonment, which is the same mandatory minimum sentence as second-degree murder. *See* ORS 137.690a (requiring a mandatory minimum term of 25 years' imprisonment for second or more conviction of a "major felony sex crime"); ORS 163.115(5)(b) (requiring a mandatory minimum term of 25 years' imprisonment for second-degree murder).

The legislative history gives insight into why the legislature made display such a serious crime—it was because the legislature was concerned with severely punishing the exploitation of children in the production of pornography. *See* Senate Bill (SB) 375 (1985) (titled "Relating to child pornography"); *State v. Carey-Martin*, 293 Or App 611, 652-67, 430 P3d 98 (2018) (James, J., concurring) (discussing in detail the context and legislative history of ORS 163.670, including the legislature's focus on "child pornography"). The legislative history of ORS 163.670 is replete with references to the evils of child pornography, its devastating long-terms effects on child victims, and the need for severe punishment to deter the use of children in pornography. *Carey-Martin*, 293 Or App at 652-67 (James, J., concurring).

Of course, the legislature took a broad view of pornography, as evidenced by the statutory language it adopted. The statute applies to causing a child to participate or engage in sexually explicit conduct for observation *or* visual recording. ORS 163.670(1). Thereby, for example, it clearly captures live sex shows involving children, even if they are not photographed, videorecorded, or otherwise visually recorded.

It is also apparent from the text and legislative history of ORS 163.670 that an audience of one is sufficient. A person commits the crime of display if the person causes a child "to participate or engage in sexually explicit conduct

for *any person* to observe or to record in a visual recording."
ORS 163.670(1) (emphasis added). "Any person" is a "'com-
prehensive and unambiguous'" phrase that means "one,
no matter what one," "any person indiscriminately," and
"every" person. *State v Tyson*, 243 Or App 94, 97-98, 259
P3d 64 (2011) (quoting *Lesser v. Great Lakes Casualty Co.*,
171 Or 174, 184, 135 P2d 810 (1943)); *Webster's* at 97.

        The legislature chose the phrase "any person"
intentionally. The original draft of what would become
ORS 163.670 said "for *another person* to observe or to record
in a visual recording." Exhibit M, Senate Committee on
Judiciary, SB 375, Apr 25, 1985 (emphasis added). However,
"another" was changed to "any" at the request of the
Multnomah County District Attorney's Office. *See* Tape
Recording, Senate Committee on Judiciary, SB 375, May 21,
1985, Tape 145, Side B (testimony of Multnomah County
District Attorney Keith Meisenheimer). The change was
described to legislators as "a minor amendment" that would
"make clear that it is unlawful for the person who does the
employing, authorizing, permitting or inducing under the
first part of that section to then also observe or record"—
and, thus, would fix a "glitch" in the bill. *Id*.

        Although not explicitly stated in the legislative his-
tory, the most obvious "glitch" in using the "another person"
language is that the resulting statute would not have cap-
tured situations in which a person causes a child to partici-
pate or engage in sexually explicit conduct for *the person* to
photograph or videorecord, or stages a live sex show involv-
ing a child for *the person*'s own observation. That would have
been a major loophole given the bill's aim at reducing child
pornography. The amendment was made, however, and, as
a result, ORS 163.670 applies equally to causing a child to
participate or engage in sexually explicit conduct for *another
person to observe*, for *one's self to observe*, for *another person
to visually record*, or for *one's self to visually record*.

        All but one of those means of violating the statute
are relatively straightforward to understand and apply. If
a person causes a child to participate or engage in sexually
explicit conduct, and another person is present and observ-
ing it, it may be fairly obvious that the conduct was caused

in whole or part "for" the other person to observe and that ORS 163.670 applies. Similarly, if a person causes a child to participate or engage in sexually explicit conduct, and another person is present and visually recording it, it may be fairly obvious that the conduct was caused in whole or part "for" the other person to record and that ORS 163.670 applies. And, if a person causes a child to participate or engage in sexually explicit conduct, and the same person visually records it, it may be fairly obvious that the conduct was caused in whole or part "for" the person to record it and that ORS 163.670 applies.

What is less clear is the issue before us in this case: what it means for a person to cause a child to participate or engage in sexually explicit conduct "for" that person to "observe." To "observe" is "to see or sense," *Webster's* at 1558, and, as previously discussed, "for" creates a functional relationship between the person's behavior and the person's purpose. Thus, if a person verbally directs a child to participate or engage in sexually explicit conduct—without personally sexually touching the child—so that he or she can observe the sexually explicit conduct as an end to itself, one may easily conclude that the person caused the child to participate or engage in sexually explicit conduct *for* the person to observe and that ORS 163.170 applies.

But what if the person is *sexually abusing* the child? Sexual abuse requires sexual intercourse or sexual contact. ORS 163.427; ORS 163.425; ORS 163.415. If a person "observes" a child while sexually abusing the child, or "observes" a child's sexual or intimate parts in connection with sexually abusing the child, is that a violation of ORS 163.670? For purposes of ORS 163.670, "sexually explicit conduct" includes actual or simulated sexual intercourse, deviant sexual intercourse,[5] genital-genital contact, oral-genital contact, anal-genital contact, oral-anal contact, vaginal or rectal penetration by an object, masturbation, sadistic or masochistic abuse, or "[l]ewd exhibition of sexual or other intimate parts." ORS 163.665(3). As such, many acts of

---

[5] Effective January 1, 2018, the term "deviate sexual intercourse" was eliminated from most Oregon sex crime statutes. Or Laws 2017, ch 318, §§ 1-14. However, the term "*deviant* sexual intercourse" remains in place in ORS 163.665(3) (emphasis added).

child sexual abuse will necessarily involve "sexually explicit conduct," and, unless the sexual abuser closes his eyes or otherwise avoids seeing what he is doing, the sexual abuser necessarily will "observe" the sexually explicit conduct that he caused. Did the legislature intend the act of observation to constitute a separate crime under ORS 163.670?

Having considered the text, context, and legislative history of ORS 163.670, we conclude that the legislature did not intend ORS 163.670 to capture a person's observation of his own sexual abuse of a child or observation of a child's sexual or intimate parts while sexually abusing or preparing to sexually abuse the child. In effect, the "observation" that occurs in such a situation is incidental to the crime of sexual abuse and was not intended by the legislature to constitute the separate—and much more serious—crime of using a child in a display of sexually explicit conduct.[6] Rather, we understand the crime of display to capture what is colloquially called child pornography, including live sex displays. That includes an audience of one—*i.e.*, a person making a visual recording of a child participating or engaging in sexually explicit conduct that he himself has caused to occur, or staging a live sex display involving a child for his own observation—but it does not include observation of one's own acts of sexual abuse against a child or observation of a child's sexual or intimate parts incidental to one's own acts of sexual abuse against a child.

We have taken a similar approach to kidnapping incidental to other crimes. A person cannot be convicted of kidnapping if the person did not intend to interfere

---

[6] Relatedly, we note that, under ORS 137.123(5), a trial court may impose consecutive sentences for "separate convictions arising out of a continuous and uninterrupted course of conduct" if "the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of *a more serious crime* but rather was an indication of defendant's willingness to commit more than one criminal offense." (Emphasis added.) As a Class A felony and major felony sex crime, display would be a "more serious crime" than most sexual-contact crimes against children, including first-degree sexual abuse. Thus, if we accepted the state's construction of ORS 163.670, trial courts would be in the counterintuitive position of having to determine, when sentencing sexual abusers of children, whether their direct acts of sexual intercourse or sexual contact with children were "incidental" to the "more serious crime" of observing the children during the abuse.

substantially with the victim's personal liberty but, rather, did so only incidentally in the course of accomplishing another crime. *State v. Mejia*, 348 Or 1, 7-8, 227 P3d 1139 (2010) (further stating that the legislature wrote the statute as it did to prevent prosecutors from charging kidnapping when a person moved a victim "incidentally to the commission of another crime, such as rape or robbery"); *see, e.g.*, *State v. Murray*, 340 Or 599, 606-07, 136 P3d 10 (2006) (reversing kidnapping conviction based on movement of the victim incidental to a car theft); *State v. Reyes-Mauro*, 217 Or App 315, 328, 175 P3d 998 (2007) (reversing kidnapping conviction based on movement of the victim incidental to a robbery).[7] The legislature sought to avoid overbroad application of the kidnapping statute by including an intent element. *Mejia*, 348 Or at 7-8. Similarly, here, the legislature sought to avoid overbroad application of the display statute by using the phrase "for any person to observe or to record in a visual recording." That language is not coincidental or casual—it is the gravamen of the offense of display.

To be clear, we do not mean to suggest that a person cannot be convicted of *both* sexual abuse and display in appropriate circumstances. In *Tyson*, the defendant alternated between sexually abusing a child herself and observing her husband sexually abusing the child. 243 Or App at 96. She was convicted of rape, sodomy, sexual abuse, and display. *Id*. She argued to the trial court and on appeal that she could not be convicted of display because "the only other observer of the sexual activity was a participant in the sexual activity." *Id*. We disagreed, finding "no indication that the legislature intended to preclude the statute from applying when a person both observes and engages in sexually explicit conduct with a child. Indeed, all indications are to the contrary." *Id*. at 99. We reaffirm that holding, noting that *Tyson* involved distinct acts of the defendant sexually abusing a child and observing the child engaged in sexually explicit conduct with someone else.

---

[7] Another somewhat analogous principle is that, for purposes of the crime of first-degree sexual abuse, the state must prove that a person used force "greater in degree or different in kind from the simple movement and contact that is inherent in the act of touching the intimate part of another" to prove that the person subjected the victim to "forcible compulsion." *State v. Tilly*, 269 Or App 665, 346 P3d 567 (2015).

Having construed the statute, we turn to the facts of this case, viewing the evidence in the light most favorable to the state. In this case, the only evidence was that defendant observed the victims' genitalia in direct connection with his own sexual abuse of the victims. The facts have already been recounted and need not be repeated here. It is sufficient to say that, in each instance, defendant had either already made sexual contact with the victim before looking at her vagina or made sexual contact with the victim at the same time as or immediately after looking at her vagina. Although defendant's observation of each victim's vagina was clearly intentional, the viewing was so closely intertwined with the touching that no reasonable juror could find that the viewing was other than incidental to defendant's criminal sexual abuse. *Cf. Reyes-Mauro*, 217 Or App at 328 (concluding that the trial court erred in denying a motion for judgment of acquittal on a kidnapping charge, where the defendant moved the victim during a robbery, because, "[a]lthough intent usually presents a jury question, the intended movement was too minimal for any reasonable jury to find the requisite intent").[8]

Accordingly, we reverse and remand the judgment of conviction as to Counts 3 and 5, based on the trial court's error in denying defendant's motion for judgment of acquittal. We affirm defendant's three convictions for sexual abuse.

Judgment of conviction on Counts 3 and 5 reversed; remanded for resentencing; otherwise affirmed.

---

[8] In cases involving a person's sexual abuse of a child, we acknowledge that it is difficult to articulate a precise standard as to when evidence of "observation" that occurred during a sexual-abuse episode will be legally sufficient for a display count to survive a motion for judgment for acquittal. Neither party has articulated a standard that we find satisfactory. Ultimately, the question is whether, on the record that exists, a reasonable juror could find that the defendant caused the child to participate or engage in sexually explicit conduct *for* the defendant to observe, as opposed to the observation being incidental to the defendant's sexual abuse. In most cases, the defendant's purpose will be a question for the factfinder. Of course, if the legislature intended the "observation" prong of ORS 163.670 to apply more narrowly than the current statutory language provides, that is a matter for the legislature to address.