Argued and submitted August 17, 2022, affirmed May 24, petition for review denied October 5, 2023 (371 Or 477)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MATTHEW JUNIOR ZAMORA,
aka Mathew J. Zamora, Jr., aka Matthew Zamora,
aka Matthew J. Zamora, Jr., aka Matthew Zamora, Jr.,
aka Matthew Zemora,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CR12260; A174153

530 P3d 914

Defendant appeals from a judgment convicting him of various offenses arising from his sexual abuse of his minor daughter, including three counts of using a child in a display of sexually explicit conduct, ORS 163.670. In his first assignment of error, defendant contends that there was insufficient evidence to support his convictions on the display counts. In his second through fourth assignments of error, defendant contends that the admission of the victim's out-of-court statements violated his Sixth Amendment right to confront witnesses. *Held*: The Court of Appeals concluded that there was sufficient evidence to support a conviction on each of the display counts because a rational trier of fact could find that defendant caused the victim to engage in sexually explicit conduct "for" defendant to observe her as a masturbatory stimulus. The trial court therefore did not err in denying defendant's motion for judgment of acquittal on those counts. The Court of Appeals rejected defendant's remaining assignments of error because the victim was available at trial and subject to unconstrained cross-examination.

Affirmed.

Amy M. Baggio, Judge.

Meredith Allen, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant appeals from a judgment convicting him of five counts of first-degree sexual abuse, ORS 163.427, three counts of using a child in a display of sexually explicit conduct (Counts 3, 6, and 9), ORS 163.670, three counts of private indecency, ORS 163.467, and one count of strangulation, ORS 163.187(4). In his first assignment of error, defendant contends that there was insufficient evidence to support his convictions on Counts 3, 6, and 9 (the display counts). In his second through fourth assignments of error, defendant contends that the admission of the victim's out-of-court statements violated his Sixth Amendment right to confront witnesses.

As to defendant's first assignment of error, we conclude that a rational trier of fact could find that defendant caused the victim to engage in sexually explicit conduct "for" defendant to observe her as a masturbatory stimulus and therefore that there was sufficient evidence to support a conviction on each of the display counts. We reject defendant's second through fourth assignments of error without extended discussion because the victim was available at trial and subject to unconstrained cross-examination. *United States v. Owens*, 484 US 554, 558, 108 S Ct 838, 98 L Ed 2d 951 (1988); *State v. Hudspeth*, 292 Or App 477, 486, 424 P3d 768, *rev den*, 364 Or 207 (2018). Accordingly, we affirm.

We state the few, undisputed facts relevant to the display counts in the light most favorable to the state, drawing all reasonable inferences in the state's favor. *State v. Leake*, 325 Or App 1, 3, 527 P3d 1054 (2023). On three separate occasions, defendant had his eight-year-old daughter lie down on his bed; he then partially disrobed her, stood over her, masturbated, and ejaculated onto her torso. For this conduct, the trial court found defendant guilty of the three display counts, as well as three counts of first-degree sexual abuse and three counts of private indecency.

On appeal, defendant argues only that the state failed to adduce sufficient evidence that he caused the victim to engage in sexually explicit conduct "for any person

to observe." ORS 163.670.[1] Relying on *State v. Clay*, 301 Or App 599, 605, 457 P3d 330 (2019), defendant argues that he cannot be convicted of using a child in a display of sexually explicit conduct because his acts of observing the victim were incidental to his acts of sexually abusing the victim as a matter of law.

In response, the state argues that the facts of this case are distinguishable from *Clay*. In the state's view, a rational trier of fact could conclude that defendant's sexually abusing conduct was incidental to his observation of the victim's sexually explicit conduct, rather than vice versa, as was the case in *Clay*.

Because the parties' dispute involves the application of our prior construction of ORS 163.670 in *Clay*, we begin by recounting that case in some detail. In *Clay*, the defendant arranged to have two teenage sisters participate in purported photoshoots at his apartment. 301 Or App at 601. On one occasion, the defendant asked the 13-year-old girl to remove her undergarments and if he could apply lotion to her legs, and he proceeded to rub the girl's vagina and buttocks and place the girl's hand on his erect penis over his shorts. *Id.* at 601-02. On another occasion, the defendant asked the 16-year-old girl to remove her undergarments and if he could apply lotion to her legs, and he proceeded to rub the girl's vagina. *Id.* at 602. The state charged the defendant with two counts of first-degree sexual abuse and one count of using a child in a display of sexually explicit conduct relating to the 13-year-old girl, as well as one count each of third-degree sexual abuse and using a child in a display of sexually explicit conduct relating to the 16-year-old girl. *Id.* at 602-03.

On appeal, the defendant challenged the sufficiency of the evidence for the display counts, arguing that observing a child in the course of sexually abusing her

---

[1] This case was argued and submitted before this court issued *State v. Parra-Sanchez*, 324 Or App 712, 527 P3d 1008 (2023), which construed "lewd exhibition of sexual or other intimate parts," ORS 163.665, as it applies to ORS 163.670. Defendant does not dispute the sufficiency of the evidence of the other elements of ORS 163.670, namely, that he employed, authorized, permitted, compelled, or induced the victim to participate or engage in sexually explicit conduct.

is not a separate crime under ORS 163.670(1). *Id.* at 605. Specifically, the defendant argued that the state failed to adduce sufficient evidence that he caused the girls to participate or engage in sexually explicit conduct "for any person to observe." *Id.*

Employing our familiar statutory interpretation analysis, we first looked to the statute's text and observed that "[t]he word 'for' creates a functional relationship between the person's behavior—'employing, authorizing, permitting, compelling or inducing a child to participate or engage in sexually explicit conduct'—and the person's purpose in engaging in that behavior—'for any person to observe or to record in a visual recording.'" *Id.* at 606 (citing ORS 163.670; brackets omitted). The significance of that term is that "ORS 163.670 does not provide that a person commits the crime of display when the person causes a child to participate or engage in sexually explicit conduct *and* any person observes or visually records the conduct." *Id.* (emphasis in *Clay*). Rather, "[i]t expressly requires that the person cause a child to participate or engage in sexually explicit conduct 'for' any person to observe or to visually record." *Id.*

Turning to the statutory context and legislative history, we explained that the legislature was concerned with "severely punishing the exploitation of children in the production of pornography" and "took a broad view of pornography, as evidenced by the statutory language it adopted." *Id.* at 607. We observed that ORS 163.670 "clearly captures live sex shows involving children"—even if they are not photographed, videorecorded, or otherwise visually recorded, and even if they involve an audience of one. *Id.* at 607-08. Thus, "ORS 163.670 applies equally to causing a child to participate or engage in sexually explicit conduct for *another person to observe*, for *oneself to observe*, for *another person to visually record*, or for *oneself to visually record*." *Id.* at 608 (emphases in *Clay*).

The issue before us in *Clay* was thus to determine "what it means for a person to cause a child to participate or engage in sexually explicit conduct 'for' that person to 'observe'" when "[t]o 'observe' is 'to see or sense,'" and "'for'

creates a functional relationship between the person's behavior and the person's purpose." *Id.* at 609. We posited that a trier of fact could easily conclude that a person caused a child to participate or engage in sexually explicit conduct for the person to observe such that ORS 163.670 applies if a person verbally directs a child to participate or engage in sexually explicit conduct—but does not personally sexually touch the child—so that the person can observe the sexually explicit conduct "as an end to itself." *Id.* However, the more difficult question was whether a person violates ORS 163.670 if the person "observes" a child while sexually abusing the child or "observes" a child's sexual or intimate parts in connection with sexually abusing the child. *Id.* Because "many acts of child sexual abuse will necessarily involve 'sexually explicit conduct,'" the person "necessarily will 'observe' the sexually explicit conduct" that they caused, "unless the sexual abuser closed his eyes or otherwise avoids seeing what he is doing." *Id.* at 609-10.

We ultimately concluded that "the legislature did not intend ORS 163.670 to capture a person's observation of his own sexual abuse of a child or observation of a child's sexual or intimate parts while sexually abusing or preparing to sexually abuse the child." *Id.* at 610. That is because "the 'observation' that occurs in such a situation is incidental to the crime of sexual abuse and was not intended by the legislature to constitute the separate—and much more serious—crime of using a child in a display of sexually explicit conduct." *Id.* (footnote omitted). Instead, we understood the crime of display to capture the creation of child pornography, including "live sex displays," which "includes an audience of one—*i.e.*, a person making a visual recording of a child participating or engaging in sexually explicit conduct that he himself has caused to occur, or staging a live sex display involving a child for his own observation—but it does not include observation of one's own acts of sexual abuse against a child or observation of a child's sexual or intimate parts incidental to one's own acts of sexual abuse against a child." *Id.*

Importantly, we clarified that we did "not mean to suggest that a person cannot be convicted of *both* sexual

abuse and display in appropriate circumstances," such as those in *State v. Tyson*, 243 Or App 94, 259 P3d 64, *rev den*, 351 Or 401 (2011), which "involved distinct acts of the defendant sexually abusing a child and observing the child engaged in sexually explicit conduct with someone else." *Clay*, 301 Or App at 611 (emphasis in original). We also acknowledged that "it is difficult to articulate a precise standard as to when evidence of 'observation' that occurred during a sexual-abuse episode will be legally sufficient for a display count to survive a motion for judgment for acquittal" but that the ultimate question "is whether, on the record that exists, a reasonable juror could find that the defendant caused the child to participate or engage in sexually explicit conduct *for* the defendant to observe, *as opposed to* the observation being incidental to the defendant's sexual abuse." *Id*. at 612 n 8 (first emphasis in *Clay*, second emphasis added). We also acknowledged that "[i]n most cases, the defendant's purpose will be a question for the factfinder." *Id*.

Applying that construction of the statute to the facts in *Clay*, we concluded that the trial court had erred in denying the defendant's motion for judgment of acquittal on the display counts because "no reasonable juror could find that the viewing [of each victim's vagina] was *other than* incidental to [the] defendant's criminal sexual abuse." *Id*. at 612 (emphasis added). In support of that conclusion, we relied on the fact that "the only evidence was that [the] defendant observed the victims' genitalia in direct connection with his own sexual abuse of the victims" and that the defendant "had either already made sexual contact with the victim before looking at her vagina or made sexual contact with the victim at the same time as or immediately after looking at her vagina." *Id*.

We understand *Clay* to hold that a defendant cannot be convicted of both sexual abuse of a child and using a child in a display of sexually explicit conduct when the evidence supports only one reasonable inference: that the observation of the child was incidental to the sexual abuse of the child. But when the evidence allows for a reasonable inference that the observation of the child was an end in itself—even if not the only end—there is sufficient evidence that the defendant caused the child to engage in a display of

sexually explicit conduct *for* the defendant to observe such that the defendant's purpose will be a question for the factfinder. Contrary to defendant's argument, while the temporal connection between the sexual abuse and the observation of the child's intimate parts is relevant to that determination, it is not the only relevant fact, and it may not be dispositive. Nor, as defendant suggested at oral argument, must there be some distinct evidence that the defendant intended to observe the child independent of the sexual abuse. Rather, a factfinder may consider all the evidence—including the nature of the defendant's sexually abusive conduct—to determine whether the defendant's observation of the child was an end in itself of the sexually abusive conduct that causes the child to participate or engage in sexually explicit conduct.

Returning to this case, defendant argues that there was insufficient evidence that he caused the victim to engage in sexually explicit conduct for him to observe because, in his view, he observed the victim's sexual or intimate parts "while" sexually abusing her and his observation "was the same as his sexually abusing conduct." Therefore, defendant contends, he "did not stage a live show with [the victim] engaging in sexually explicit conduct and then observe the display."

We disagree. Although defendant's observation arguably could be characterized similarly to the defendant's observation in *Clay* as directly connected to and closely intertwined with his sexual abuse of the victim, we conclude that a rational trier of fact could find that defendant caused the victim to engage in sexually explicit conduct "for" defendant to observe her as a masturbatory stimulus. As the state points out, unlike the defendant's conduct in *Clay*, the evidence in this case, viewed in the light most favorable to the state, supports a reasonable inference that defendant engaged in sexually abusive conduct—and by doing so caused the victim to engage in sexually explicit conduct—for the purpose of observing her to visually stimulate his engagement in further sexually abusive conduct. That is, defendant's observation of the victim's sexual and intimate parts was an end in itself, even if it was not the only end, of defendant's sexually abusive conduct. We therefore conclude

that there was sufficient evidence to support a conviction on each of the display counts.

We appreciate, as the state acknowledged at oral argument, that defendant's conduct may be on the "outer edge" of the conduct the legislature intended to capture under ORS 163.670, and we are well aware that the crime of display is classified as a more serious offense than the other crimes of conviction that arose from defendant's sexually abusive conduct in this case. However, as we noted in *Clay*, 301 Or App at 605 n 8, "if the legislature intended the 'observation' prong of ORS 163.670 to apply more narrowly than the current statutory language provides, that is a matter for the legislature to address."

Affirmed.