No. 552 June 18, 2025 371

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MAURICE ANTONIO BAILEY,
*Defendant-Appellant.*

Lane County Circuit Court
20CR19440; A179000

R. Curtis Conover, Judge.

Submitted February 26, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kristin Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rolf C. Moan, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this criminal case, defendant appeals from a judgment of conviction for, among other crimes, one count of using a child in a display of sexually explicit conduct, ORS 163.670, raising two assignments of error.[1] In his first assignment, defendant argues that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to prove that he directed the victim for the purpose of enabling him to observe her sexually explicit conduct. In his second assignment, defendant asserts that the court erred in imposing a sentence of 70 months' imprisonment on the display count because it was disproportionate under Article I, section 16, of the Oregon Constitution. We disagree with both of defendant's arguments and, accordingly, we affirm.

Because the parties are familiar with the procedural and factual background, we do not set forth a detailed recitation of the facts in this nonprecedential memorandum opinion. With respect to the first assignment of error, we review the denial of a motion for judgment of acquittal by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

Defendant argues that there is insufficient evidence that defendant's observation of the victim, D's, genitals was distinct from his subsequent act of touching her. Relying on our opinion in *State v. Clay*, 301 Or App 599, 457 P3d 330 (2019), defendant contends that he observed D's genitals immediately before touching her and, thus, that "the viewing was so closely intertwined with the touching" that no reasonable juror could find that his observation was anything other than incidental to the touching. *Id.* at 612. Defendant's argument offers a plausible way to view the

---

[1] ORS 163.670 has been amended since the underlying conduct in this case. Or Laws 2023, ch 407, § 2. Because the amendments do not affect our analysis, we refer to the current version of the statute in this nonprecedential memorandum opinion.

evidence; however, it is not the only way to do so, especially in light of our standard of review that applies to a challenge to the denial of a motion for judgment of acquittal.

Although defendant's observation of D's genitals lasted for only "a couple of seconds," and the touching occurred immediately after and lasted for more than a minute, the temporal connection between the acts is not the only factor in determining whether a defendant's observation was incidental to the touching. *See State v. Zamora*, 326 Or App 140, 147, 530 P3d 914, *rev den*, 371 Or 477 (2023) (explaining that, although "the temporal connection between the sexual abuse and the observation of the child's intimate parts is relevant to that determination, it is not the only relevant fact, and it may not be dispositive"). The primary consideration is whether the factfinder could reasonably infer that the "observation of the child was an end in itself," even if it was not the only end. *Id.* at 146-47.

Here, a reasonable factfinder could have inferred that defendant's observation of D's genitals was an end in itself. Defendant specifically asked D to undress, lay on the bed, spread her legs, and spread her labia for defendant to be able to look at her genitals for a couple of seconds. Only after those instructions and that observation did defendant touch D. Thus, a reasonable finder of fact could infer that defendant induced D to spread her legs and labia for the purpose of observing her genitals and that defendant decided to touch D's vagina after observing her genitals. Thus, although defendant's view of the evidence is a plausible way to view it, there is another reasonable inference that the finder of fact could have made given the evidence in the record. Accordingly, the trial court did not err in denying defendant's motion for judgment of acquittal.

We turn to the second assignment of error challenging defendant's sentence. Article I, section 16, provides, in part: "Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense." A punishment violates Article I, section 16, only if it is so disproportionate to the offense as to "shock the moral sense" of reasonable people. *State v. Rodriguez/Buck*, 347 Or 46, 57-58, 217 P3d 659 (2009). When a court is evaluating

the proportionality of a sentence applied in a specific case, the court considers at least three factors: "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." *Id.* at 58. Among the factors a court considers in an as-applied challenge, the court assesses "the specific circumstances and facts of the defendant's conduct that come within the statutory definition of the offense, as well as other case-specific factors, such as characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim." *Id.* at 62. Indeed, "no one factor is determinative in the *Rodriguez/Buck* analysis." *State v. Horseman*, 294 Or App 398, 413, 432 P3d 258 (2018), *rev den*, 364 Or 723 (2019).

As to the first factor, we conclude that defendant's conduct was particularly grave because of his relationship with D and because of D's vulnerability. Defendant was in a position of trust as D's father figure and had been living with the family since D was a young child. *See State v. Camacho-Garcia*, 268 Or App 75, 82, 341 P3d 888 (2014), *rev den*, 357 Or 164 (2015) (concluding that a 75-month sentence for first-degree sexual abuse was constitutional, in part, because the defendant was the victim's "*de facto* step-father" and was thus in a "trust relationship," and the defendant breached that trust more than one time). Moreover, at the sentencing hearing, D's victim impact statement explained the effect that defendant's abuse has had on her, including causing her severe depression and anxiety. Therefore, given defendant's position of trust as D's father figure and the impact that the conduct had on D, who was 16 years old at the time of the crime, we conclude that the gravity of the offense is such that the sentence would not "shock the moral sense" of reasonable people.

The other two factors do not persuade us otherwise. We acknowledge that defendant's conduct is likely at the outer edge of the conduct that the legislature intended to capture. *See Clay*, 301 Or App at 607 (discussing the legislative history and explaining that, in enacting ORS 163.670, "the legislature was concerned with severely punishing the

exploitation of children in the production of pornography"). Nevertheless, as described above, because of the gravity of defendant's conduct, we conclude that the sentence is not unconstitutionally disproportionate to the offense. Finally, although defendant had only a minor criminal history at the time of sentencing, D also testified to multiple instances of uncharged conduct such that the third factor does not weigh heavily in defendant's favor. *See Rodriguez/Buck*, 347 Or at 78 (explaining that "[t]raditional understandings of proportionality, as well as [the Supreme Court's] cases, require [courts] to consider whether a defendant is a repeat offender by considering previous criminal convictions and whether there is evidence of multiple instances of uncharged wrongful conduct").

Affirmed.